UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**OWYHEE RIVER LLC,**                                    Civil Case No. 3:12-CV-02236-KI

    Plaintiff,

                                        OPINION AND ORDER

        v.

**WELLS FARGO BANK, NA,** fka
**WELLS FARGO BANK MINNESOTA,**

    Defendant.

Charles R. Markley
Stanford R. Landress
Greene & Markley, P.C.
1515 SW Fifth Avenue, Suite 600
Portland, Oregon 97201

    Attorneys for Plaintiff

Jeffrey M. Edelson
Markowitz, Herbold, Glade
& Mehlhaf, P.C.
Suite 3000 Pacwest Center
1211 SW Fifth Avenue
Portland, Oregon  97204-3730

Heather Deans Foley
Venable LLP
750 E. Pratt Street, Suite 900
Baltimore, MD  21202

    Attorneys for Defendant

KING, Judge:

Plaintiff Owyhee River LLC ("Owyhee") alleges claims for breach of contract, conversion, and money had and received against defendant Wells Fargo Bank, NA fka Wells Fargo Bank Minnesota, NA ("Wells Fargo").  The claims arose when Wells Fargo allegedly retained an escrow reserve after it assigned to a third party a loan in which Owyhee was the debtor.  Before the court are Plaintiff's Motion for Summary Judgment [43] and Defendant/Counter-Plaintiff's Motion for Summary Judgment [46].  For the reasons below, I deny the motions for summary judgment and set the case for trial.

## FACTS

On August 17, 2001, Owyhee borrowed $7,060,000 from Artesia Mortgage Capital Corporation ("Artesia").  The parties executed numerous loan documents to memorialize their agreement, including documents which set up reserves for:  (1) capital repairs, replacements and improvements; (2) letter of credit charges; and (3) tenant improvements, leasing commissions and debt service.

The loan documents make the reserves additional security for the repayment of Owyhee's debt. As one example, the capital reserve agreement states: "Borrower assigns to Lender and grants a security interest in the Reserve Funds and the Reserve Account as additional security for all of Borrower's obligations under the Note, the Security Instrument and the other Loan documents. . . ." Fishkind Decl. Ex. 3 ¶4.a (hereinafter "Capital Reserve Agreement").

> The Reserve Funds and the Reserve Account are pledged as additional security for the indebtedness evidenced by the Note and secured by the Security Instrument. If Borrower defaults on any payment due under the Note . . . Borrower shall immediately lose all of its rights to receive disbursements of Reserve Funds unless and until all amounts secured by the Security Instrument have been paid in full and the lien of the Security Instrument has been released or assigned by Lender. Upon any such default that continues beyond any applicable cure period, Lender may in its sole and absolute discretion, without notice or demand to Borrower:
>
> (1) withdraw any or all of the Reserve Funds and apply the same, after deducting all costs and expenses incurred in connection with such withdrawal (including, but not limited to, reasonable attorneys' fees and costs) to the indebtedness secured by the Security Instrument, including any applicable prepayment fee;

Id. §11(b).

The reserve agreements address distribution of the remaining reserves after the debt is paid:

> <u>Disbursement of Remaining Reserve Funds</u>. After payment or Defeasance (as defined in the Note, if applicable) in full by Borrower of all sums evidenced by the Note and secured by the Security Instrument and release or assignment by Lender of the lien of the Security Instrument, Lender shall cause all remaining Reserve Funds to be disbursed to Borrower.

Id. § 23.

The other reserve agreements contain the same language.

Page 3 - OPINION AND ORDER

If Owyhee defaults, the security agreement allows the lender to apply the reserves to the amounts due under the loan documents.

> Upon the occurrence of any Event of Default . . . Lender may apply, in any amount and in any order as Lender shall determine in Lender's sole discretion, any Impounds held by Lender at the time of application . . . as a credit against the sums secured by this Security Instrument.  Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Impounds held by Lender.

Fishkind Decl. Ex. 2 § 1.04 (hereinafter "Security Agreement").

On August 15, 2002, Artesia assigned the loan to a predecessor of Wells Fargo as trustee for the registered holders of commercial mortgage pass-through certificates.

The loan matured and all amounts Owyhee owed under the loan documents came due on September 1, 2011.  Owyhee defaulted by failing to repay the loan in full.  On December 21, 2011, Wells Fargo instructed the trustee to commence a nonjudicial foreclosure.

On March 30, 2012, Wells Fargo assigned all of its right, title, and interest in the loan and loan documents to Beaver Trust 2012-1, as memorialized in a Loan Sale Agreement and Assignment and Assumption of Assigned Rights and Obligations ("Loan Sale Agreement").  No separate impound, escrow or reserve funds were transferred to Beaver Trust 2012-1 as part of the sale.  The Loan Sale Agreement states: "<u>Escrows and Reserves</u>.  Any funds impounded or held in escrow or reserve by Seller for the benefit of Obligor shall be retained by Seller."  Markley Decl. Ex. 3 ¶ 6.6.  According to the servicer for Beaver Trust 2012-1, the unpaid principal balance of the loan as assumed by Beaver Trust 2012-1 was $5,557,706.54.

On August 14, 2012, the trustee held a foreclosure sale and sold the property encumbered by the Security Agreement to Beaver Agilent for $5,350,000.  Owyhee has never fully repaid the loan.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The initial burden is on the moving party to point out the absence of any genuine dispute of material fact.  Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains a fact dispute to be tried.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the court "must view the evidence on summary judgment in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party."  Nicholson v. Hyannis Air Serv., Inc., 580 F.3d 1116, 1122 n.1 (9th Cir. 2009) (internal quotation omitted).

## DISCUSSION

Wells Fargo insists it credited Owyhee prior to the effective date of the March 30, 2012 loan sale for all reserves Wells Fargo held.  CWCapital Asset Management LLC ("CWCapital"), special servicer for Wells Fargo, sent an email to Beaver Trust 2012-1 on March 26, 2012 which contained the following accounting:

| Unpaid Principal Balance of Loan | $5,735,374.81 |
|---|---|
| Total Funds in Escrow and Reserves | 821,514.36 |
| Accrued Note Interest | (218,231.01) |
| Accrued Default Interest | (134,060.35) |

Page 5 - OPINION AND ORDER

| Late Fees | (230,063.17) |
|---|---|
| Expenses | (60,000.00) |
| Interest on Advances | (1,491.56) |
| Credit Against Principal | (177,668.27) |
| Ending Principal Balance as of March 28, 2012 | $5,557,706.54 |

Murphy Decl. ¶ 5; Fishkind Decl. ¶ 16.

Wells Fargo notes the unpaid principal balance before the reserves were applied to the loan just before the March 30, 2012 sale, shown above as $5,735,374.81, is the same amount show in the Loan History, shown below, as of March 22, 2012, a few days before the sale. Because the unpaid principal balance assumed by Beaver Trust 2012-1 as a result of the loan sale was $5,557,706.54, Wells Fargo argues it clearly applied the reserve funds to the loan.

Owyhee raises hearsay objections to the Fishkind Declaration, which contained the chart above. Scott Fishkind, Vice President of CWCapital, reviewed the books and records maintained by Wells Fargo as trustee for the owner of the loan. To support the information in the chart, Fishkind refers to an email from Adam Gevarter, a Senior Associate at CWCapital, to Fishkind and Beaver Trust 2012-1, containing the same chart and the comment that it represented the figures accruing interest to a particular date. Owyhee contends Fishkind does not have personal knowledge of this information and is relying on hearsay from Gevarter, making the chart inadmissible. Owyhee also raises a hearsay objection to the Gevarter Declaration, filed with Owyhee's reply.

Both declarations appear to fall within the business record exception to hearsay under Federal Rule of Civil Procedure 803(6). In any event, declarations containing hearsay are

Page 6 - OPINION AND ORDER

admissible for summary judgment purposes if the hearsay could be presented in an admissible form at trial. The court is to focus on the admissibility of the contents of the evidence and not on the admissibility of the evidence's form. Fraser v. Goodale, 342 F.3d 1032, 1037 (9th Cir. 2003) (contents of plaintiff's diary were admissible to oppose a motion for summary judgment). I assume both declarants could testify and be cross-examined at trial.

Owyhee also raises objections to the content of the chart and the email containing it:

1. There is no statement that the application of the reserves had actually occurred or when it occurred. This is in accord with the Loan History (shown below), which shows no application of the reserves.

2. There is no information on where Gevarter got the information in the chart.

3. The loan documents do not give Wells Fargo the authority to charge a Late Fee for a late balloon payment, which Owyhee agrees occurred. The loan documents only allow a Late Fee charge for a late monthly payment, which Owyhee contends never occurred.

4. There is no backup explaining the $60,000 Expense charge or what expenses were incurred for the loan. Owyhee claims Wells Fargo is entitled to expenses for servicing the loan but not for selling the loan to Beaver Trust 2012-1.

5. The Ending Principal Balance in the chart, $5,557,706.54, is inconsistent with the Loan History, which shows the Principal Balance to be $5,639,654.16 as of March 30, 2012, the date of the assignment.

Owyhee relies on the Loan History, which it claims never applies the reserves to the loan balance:

Loan History; Origination Amount: $7,060,000.00; Beginning Balance date: 5-17-01

Page 7 - OPINION AND ORDER

| Trans. Date | Trans. Description | Paymt. Due Date | Trans. Amount | Principal | Interest | Unapplied | Principal Balance |
|---|---|---|---|---|---|---|---|
| 2-29-12 | System Generated Interest Credit on Escrow | 2-29-12 | (53.67) | 0.00 | 0.00 | 0.00 | 5,735,374.81 |
| 3-12-12 | Unapplied Payment | 3-12-12 | 53,955.50 | 0.00 | 0.00 | 53,955.50 | 5,735,374.81 |
| 3-22-12 | Disbursement– Recoverable Advance | 3-22-12 | 1,043.90 | 0.00 | 0.00 | 0.00 | 5,735,374.81 |
| 3-30-12 | Regular Payment | 11-1-11 | 52,678.97 | 15,084.74 | 37,584.23 | (52,678.97) | 5,720,280.27 |
| 3-30-12 | Regular Payment | 12-1-11 | 52,678.97 | 16,402.86 | 36,276.11 | (52,678.97) | 5,703,877.21 |
| 3-30-12 | Regular Payment | 1-1-12 | 52,678.97 | 15,301.16 | 37,377.82 | (52,678.97) | 5,688,576.06 |
| 3-30-12 | Regular Payment | 2-1-12 | 52,678.97 | 15,401.42 | 37,277.65 | (52,678.97) | 5,673,074.64 |
| 3-30-12 | Regular Payment | 3-1-12 | 52,678.97 | 17,900.83 | 34,778.14 | (52,678.97) | 5,655,273.81 |
| 3-30-12 | Misc. Fee Credit | 3-30-12 | 10,240.57 | 0.00 | 0.00 | (10,240.57) | 5,655,273.81 |
| 3-30-12 | Unapplied Payment | 3-30-12 | 3,983,605.45 | 0.00 | 0.00 | 3,983,605.45 | 5,655,273.81 |
| 3-30-12 | Misc. Fees– Waive | 3-30-12 | 25.00 | 0.00 | 0.00 | 0.00 | 5,655,273.81 |
| 3-30-12 | Regular Payment | 4-1-12 | 52,678.97 | 15,619.65 | 37,059.32 | (52,678.97) | 5,639,654.16 |

Mem. in Supp. of Pl.'s Mot. for Summ. J. 5.[1]

Owyhee also relies on the Master Servicer Information statement ("MSI Statement"), included as an appendix to the Loan Sale Agreement. The MSI Statement, which states at the top

---

[1] For the sake of readability and because the amounts were so small, I left out some columns: (1) Tax, Insurance, and Late Charge, which contained all zeroes; (2) Other Amounts, which had an entry on 3-22-12 for $1,043.90, an entry on 3-30-12 for $25.00, and the rest zeroes; and (3) Other Reserves, which had an entry for $102.43 on the beginning balance of 5-17-01, and an entry for $53.67 on 2-29-12.

Page 8 - OPINION AND ORDER

it is to be updated prior to closing, shows the principal balance as $5,735,374.81, just like all the other documents prior to the closing transactions.  It also shows tax, insurance, and reserve balances in a total of $572,829.08.  Owyhee claims no loan documents show these reserve balances being applied.

Owyhee contends Wells Fargo produced no documents showing any of the funds in the escrow reserves being applied to the loan at any time, let alone before the assignment to Beaver Trust 2012-1.  In particular, Owyhee notes Wells Fargo has not produced a deposit slip either removing the reserves from Owyhee's accounts or depositing the reserves into Wells Fargo's accounts.  After the assignment, Owyhee claims Wells Fargo was no longer a creditor of Owyhee and thus no longer had the legal right to apply the escrow reserve to an indebtedness which no longer existed.  Because the Loan Sale Agreement states no escrow or reserve funds were transferred to Beaver Trust 2012-1 as part of the sale, Owyhee argues Wells Fargo must have retained them.  Owyhee asks the court to require Wells Fargo to return the surplus funds to Owyhee.

I am unable to determine on this record either how or when Wells Fargo applied the reserve funds to the debt.  Sums of money of this magnitude do not change hands without a precise paper trail documenting the transaction.  After studying the records counsel submitted, I have a Loan History stating the principal balance on March 30, 2012 was $5,639,654.16 and an email from CWCapital stating the principal balance on March 28, 2012 was $5,557,706.54.  I cannot explain the difference.  Until I understand how the money flowed, I cannot address the legal arguments the parties make about the claims.

Accordingly, I find a material issue of fact exists which precludes granting summary judgment to either party.

## CONCLUSION

Plaintiff's Motion for Summary Judgment [43] and Defendant/Counter-Plaintiff's Motion for Summary Judgment [46] are denied. I ask counsel to confer in an attempt to lodge another Pretrial Order by November 1, 2013 which specifies all agreed facts and narrows the issues for the court trial. The court assumes the trial can be accomplished in a single day and suggests January 7 or 8, 2014. If either date is acceptable, please inform chambers by September 13, 2013 or ask for a telephone status conference if the dates are unacceptable or counsel expects trial to take more than one day.

IT IS SO ORDERED.

Dated this    3rd    day of September, 2013.

    /s/ Garr M. King
Garr M. King
United States District Judge

Page 10 - OPINION AND ORDER