UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**OWYHEE RIVER LLC.**,

        Plaintiff,

        v.

**WELLS FARGO BANK, NA**, formerly known as Wells Fargo Bank Minnesota, NA,

        Defendant.

Civil Case No. 3:12-CV-02236-KI

FINDINGS AND CONCLUSIONS

    Charles R. Markley
    Greene & Markley, PC
    1515 SW Fifth Avenue, Suite 600
    Portland, Oregon  97201

        Attorney for Plaintiff

    Heather D. Foley
    Venable LLP
    750 E. Pratt Street, Suite 900
    Baltimore, MD  21202

Page 1 - FINDINGS AND CONCLUSIONS

      Jeffrey M. Edelson
      Markowitz Herbold Glade & Mehlhaf, PC
      1211 S. W. Fifth Avenue, Suite 3000
      Portland, Oregon  97204

           Attorneys for Defendant

KING, Judge:

      The court held a bench trial on March 25, 2014.  Below are my findings of fact and conclusions of law.

      On August 17, 2001, Artesia Mortgage Capital Corporation ("Artesia") loaned Owyhee River LLC ("Owyhee") $7,060,000.  The loan was evidenced by multiple documents, including a promissory note, a deed of trust securing the loan in part with real property located in Benton County, Oregon, and escrow reserve agreements.

      The loan documents required Owyhee to pay certain funds into escrow reserve accounts which functioned as additional security for repayment of the loan principal and interest, provided funds for the payment of real property taxes and insurance, and secured payment of costs and expenses for other potential charges.

      Artesia assigned the loan to Wells Fargo on August 15, 2002 as trustee of a commercial mortgage-backed securities trust.  Owyhee performed all of its obligations through August 2011, but was unable to make the balloon payment due September 1, 2011, putting Owyhee in default.

      On March 30, 2012, Wells Fargo sold and assigned nearly all rights and interest in the loan to Beaver Trust 2012-1 ("Beaver").  As of March 30, 2012, the escrow reserves contained $572,829.08.

Under the loan documents, Wells Fargo had the right to apply the escrow reserves to the loan balance to reduce Owyhee's indebtedness to Wells Fargo. The exact language specifying this provision varied from document to document. For example, the three Reserve Agreements allowed the Lender to "withdraw any or all of the Reserve Funds and apply the same . . . to the indebtedness." Ex. 3 at 6, ¶ 11(b)(i)(1). The Deed of Trust allowed the Lender to "apply . . . any Impounds held by Lender . . . as a credit against the sums secured by this Security Instrument." Ex. 2 at 9, ¶ 1.04.

Wells Fargo only held the debt up to the moment of the sale and transfer of the loan to Beaver. Once this happened, Wells Fargo ceased to be a creditor of Owyhee.

Owyhee contends there is no evidence Wells Fargo withdrew and applied the escrow reserves *prior* to the sale of the loan to Beaver. Owyhee argues the email and worksheet from the special servicer only explain what was intended to happen at the loan sale, scheduled a few days later. Wells Fargo did not provide evidence of a withdrawal of funds from the reserve account or accounts and deposit into the investors' trust account to reduce the indebtedness. Both sides' experts explained there would be some sort of paper or electronic trail indicating this movement of funds, likely including an authorization, debits and credits on general ledgers for the various accounts, and a transfer mechanism such as a wire or ACH transfer. It is not clear to me, however, that Wells Fargo would have the records of the underlying transaction. I would expect the records to be with the master servicer, special servicer, or the financial entity holding the accounts, which, for the escrow reserves, appeared to be PNC.

Owyhee's claim relies on a narrow interpretation of the "withdrawal" and "apply" language in some of the loan documents. I do not believe this interpretation is warranted,

Page 3 - FINDINGS AND CONCLUSIONS

especially in light of the language in the Deed of Trust allowing for a credit against the indebtedness.

Moreover, there is evidence of a contemporaneous credit of the escrow reserves against the loan balance at the time of the loan sale. The special servicer, which is tasked with completing sales of troubled loans, intended to allow a contemporaneous credit. The intent is noted in two documents, a worksheet completed by the special servicer's agent and an email from that agent explaining how the funds would be applied. Moreover, Beaver booked the loan it purchased using these calculations, further evidence the credit was applied at the time of the loan sale. Owyhee offered no evidence to the contrary.

Finally, I thought both experts provided helpful testimony. The defense expert, however, had vastly more experience in the mortgage-backed securities business and had seen approximately 100 sales of this nature. He was convinced Owyhee received a contemporaneous credit, and the economic benefit, at the time of the loan sale. This is all the contracts required.

For these reasons, I find Wells Fargo did not breach the contract specified in the loan documents and did not convert Owyhee's funds in the escrow reserves. I dismiss those claims with prejudice, along with the money had and received claim.

Wells Fargo may file a motion for the costs and attorneys fees sought in its counterclaim, as provided under Federal Rule of Civil Procedure 54.

Dated this ___26th___ day of March, 2014.

                                         /s/ Garr M. King
                                         Garr M. King
                                         United States District Judge